UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANEEN MILLER & JAMES MAHOOD, ) <br> ) <br> Plaintiffs, ) <br> ) <br>v.                                                         ) <br> ) <br>KRISTEN NICHOLS & BRENDA               ) <br>HARVEY, Commissioner of the Maine      ) <br>Department of Health & Human Services, ) <br> ) <br> ) <br> Defendants.                       ) | Docket no. 2:08-cv-355-GZS |

**ORDER ON PENDING MOTIONS**

Before the Court are Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (Docket #s 7 & 9) and Defendants' Motion to Dismiss (Docket # 26). As explained herein, the Court GRANTS the Motion to Dismiss and, therefore, DENIES as MOOT Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction.

**I.   STANDARD OF REVIEW**

Defendant has moved to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) & (6). Pursuant to Rule 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. See, e.g., American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004) ("Federal courts are courts of limited jurisdiction. In the absence of jurisdiction, a court is powerless to act."); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Pursuant to Rule 12(b)(6), a party is entitled to have a

claim against it dismissed when the allegations on which the claim depends "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When considering any motion under Rule 12(b), the Court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in the plaintiff's favor. However, in determining the existence of subject matter jurisdiction, the Court is not confined to the pleadings and may consider other reliable materials in the record to the extent those materials "illuminate[], supplement[], or even contradict[] other materials in the . . . record." Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007). Ultimately, the plaintiff bears the burden of establishing the existence of subject matter jurisdiction. See Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996).

Only after the Court has determined it has jurisdiction may it turn to the question of the sufficiency of the complaint. Then, the Court must determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ----, 127 S.Ct. 1955, 1967 (2007).

## II.   BACKGROUND

The parties have provided the Court with voluminous records from the state court custody proceedings that serve as the basis for this case.  The relevant facts laid out below are culled from both the pleadings and these records.  While the Court has reviewed the entire docket, given the limited nature of the Court's inquiry and the confidential nature of the proceedings below, the Court limits its recitation of the facts to the extent possible.

On December 25, 2005, G.M., the biological daughter of Plaintiffs Janeen Miller and James Mahood, was taken to the emergency room at Mercy Hospital.  At the time, G.M. was 22 months old.  She was transferred to Maine Medical Center where she was treated by Dr. Haymann.  Dr. Hayman, in turn, reported her observations of G.M. and Miller to the Maine Department of Health and Human Services ("DHHS").  On December 27, 2005, DHHS sought an order of preliminary child protection over G.M.  With the parents' consent, that order was entered on January 9, 2006.

With this order in place, G.M. was placed in a therapeutic foster home.  DHHS assigned Defendant Kristen Nichols as the social worker for G.M.'s case with the expressed goal of reunifying G.M. with Miller and Mahood.  By all accounts, the relationship between Nichols and Miller was unproductive.  As alleged in the Complaint, Nichols perceived Miller as having a disability, namely, a mental illness, but admittedly took no steps to provide Miller with any accommodations and, in fact, denied Miller access to some DHHS services.  Nichols also conditioned Mahood's reunification with G.M. on him promising to not associate with Miller.  In the course of G.M.'s court-ordered medical evaluations in 2007, Nichols, without proper authorization, sent the evaluator selected unfavorable psychiatric records of Miller.  Plaintiffs claim that Nichols also misrepresented her status as a licensed social worker when she only had a conditional license.  Plaintiffs seeks to hold Defendant Harvey liable for the alleged wrongs of

3

Defendant Nichols claiming that there was a failure to properly train and supervise Nichols in connection with her work on G.M.'s case.

On October 16, 2006, DHHS filed its Petition for the Termination of Parental Rights, which sought to permanently terminate the parental rights of Plaintiffs as to G.M. Judge Bradley of the Maine District Court conducted eight days of hearings in August through October 2007. After reviewing the evidence received at those hearings, Judge Bradley reopened the record and received additional testimony on December 14, 2007. At the close of this last hearing, Judge Bradley admittedly expressed that she was inclined to deny termination. (See Feb. 7, 2008 Order (Docket # 25-4) at 1 n.1.)

Nonetheless, after a full review of all of the evidence, Judge Bradley filed a 13-page Order Terminating Parental Rights (Docket # 16) on January 23, 2008. In this Order, Judge Bradley found "clear and convincing evidence that Janeen Miller has severe untreated mental health issues" and that these issues, in turn, have left Miller "unable to protect [her daughter] from jeopardy." (Order (Docket # 16) at 8-9.) As to James Mahood, the court concluded that he was "unable to safely parent his child." (Id. at 9.) The Court also concluded that DHHS had "made reasonable efforts to rehabilitate and reunify the family" and that after two years in a therapeutic foster home, it was in the best interests of the child that parental rights be terminated. (Id. at 12.)

Miller, Mahood and the Guardian Ad Litem all requested additional findings of fact and conclusions of law following the receipt of the District Court's January 23, 2008 Order. Miller requested specific findings that Nichols violated the ADA and HIPAA during her management of the case. (See Miller Add'l Requests for Ruling (Docket # 25-3) at 6-7.) Ultimately, Judge Bradley refused to make these additional requested findings. (See Feb. 7, 2008 Order (Docket # 25-4) at 1-2.)

The parents appealed Judge Bradley's decision to the Maine Law Court. Miller's Appellant Brief explicitly included claims that Nichols "violated the Americans with Disabilities Act, HIPAA and 42 U.S.C. § 1983." (Appellant Brief (Docket # 24-3) at 4, 25, 36-37.) In a similar vein, Mahood's Appellant Brief included arguments that "the State did not attempt to provide proper reunification." (Appellant Brief (Docket # 24) at 20-21.) In a short decision dated August 12, 2008 (Docket # 16-2), the Law Court affirmed the District Court's decision terminating the parental rights of both Miller and Mahood. Appellants then sought reconsideration. In their Brief in Support of the Motion for Reconsideration (Docket # 24-5), Appellants primarily argued that there were violations of substantive due process, invoked the bias of Nichols and again alleged ADA violations. (See Reconsideration Brief (Docket # 24-5) at 4-8.) The Law Court denied the parents' motion for reconsideration on September 9, 2008. (See Order Denying Motion to Reconsider (Docket # 16-3).)

On October 20, 2008, Plaintiffs filed the instant Complaint (Docket # 1) with this Court. Three weeks later, Plaintiffs filed the pending Motion for TRO/Preliminary Injunction (Docket # 7). Plaintiffs' Amended Complaint (Docket # 3) states claims under the Americans with Disabilities Act (Counts I & II), Section 504 of the Rehabilitation Act (Count III), 42 U.S.C. § 1983 (Freedom of Religion) (Count IV), Violations of HIPAA,[1] the Privacy Act and 42 U.S.C. § 1983 (Count V), 42 U.S.C. § 1983 (Freedom of Association) (Count VI), 42 U.S.C. § 1983 (Fraud in Deprivation of liberty Interest) (Count VII), and 42 U.S.C. § 1983 (Supervisory Liability) (Count VIII). In Count IX, the Amended Complaint also seeks injunctive and declaratory relief for the various violations of

---

[1] HIPAA is the acronym for the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936. In connection with the pending motions, Defendant asserted that there is no private right of action under HIPAA. (See Def. Mot. to Dismiss (Docket # 26) at 12.) In response, Plaintiffs agreed that it could find no research suggesting that there is a private right of action for HIPAA violations. (See Pls. Response (Docket # 27) at 11.) Thus, the Court need not further discuss or consider the "HIPAA claim" asserted in Count V and considers that portion of Count V DISMISSED without objection.

5

Plaintiffs' substantive due process rights, including an order enjoining DHHS from placing G.M. up for adoption and an order allowing Plaintiffs continued visitation.

### III. DISCUSSION

Despite the troubling factual allegations of this case, this Court, as a federal court with limited jurisdiction, cannot serve as a forum for the Plaintiffs to relitigate issues already raised and decided in the prior state court proceedings. Defendants specifically invoke two legal doctrines, which they argue prevent the Court from hearing any of Plaintiffs' asserted claims: (1) the Rooker-Feldman doctrine and (2) issue preclusion.

#### A. The Rooker-Feldman Doctrine

Pursuant to the Rooker-Feldman doctrine and 28 U.S.C. § 1257, a party who obtains a final judgment from the highest court of a state — in this case, from the Maine Law Court — may only have that judgment reviewed by writ of certiorari to the United States Supreme Court. The Rooker-Feldman doctrine precludes "parties who lost in state court from 'seeking review and rejection of that judgment' in federal court." Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). To the extent that Plaintiffs have asked the Court to "enjoin the State from placing G.M. up for adoption" (Am. Compl. ¶ 143; Pls. Mot. for TRO/Prelim. Inj. (Docket # 7) at 33), it would appear that Plaintiffs are in fact asking this Court to review and reject the final judgment affirmed by the Law Court on August 12, 2008. (See In re G.M. Memorandum of Decision (Docket # 16-2).) In fact, multiple federal courts have acknowledged that federal cases seeking to challenge the termination of parental rights by state courts fall within the heartland of cases preempted by the Rooker-Feldman doctrine. See, e.g., Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005) ("Suppose a state court . . . terminates a father's parental rights and orders the state to

take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments."); Doe v. Mann, 415 F.3d 1038, 1043 (9th Cir. 2005) (concluding that a challenge to the termination of parental rights fell "within the traditional boundaries of the Rooker-Feldman doctrine" while ultimately holding that there was jurisdiction based on a narrow exception for "child custody proceedings involving Indian children"). With respect to the claims now asserted by Plaintiffs, there is no doubt that Count IX, which asks for injunctive and declaratory relief, essentially seeks to overturn the termination of parental rights; such a claim is clearly precluded under the Rooker-Feldman doctrine. On this basis, the Court finds that it has no jurisdiction to grant Plaintiffs the injunctive and declaratory relief sought in Count IX and in the pending Motion for Preliminary Injunction.

In responding to Defendants' Motion to Dismiss, Plaintiffs argue that this case falls outside Rooker-Feldman because they now seek damages for various civil rights violations as well as violations of the ADA and the Rehabilitation Act. They emphasize that these rights were violated not by the state court but by DHHS, specifically Nichols. As to Plaintiffs' remaining claims, this argument has merit. As the Supreme Court has recently held in Exxon Mobil, the Rooker-Feldman doctrine does not deprive a district court of subject-matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon Mobil, 544 U.S. at 293

7

(internal quotation omitted). To the extent that Plaintiffs' Complaint seeks money damages for alleged violations of the ADA, Section 504 of the Rehabilitation Act and 42 U.S.C. § 1983 from Defendants Nichols and Harvey, these claims would appear to fall within this exception to the Rooker-Feldman doctrine described in Exxon Mobil. Thus, in accordance with the direction of the Exxon-Mobil opinion, the Court proceeds to consider whether Plaintiffs' remaining claims are precluded.

**B.  Issue Preclusion**

Unlike 28 U.S.C. § 1257 and Rooker-Feldman Doctrine, the question of whether a judgment is final for purpose of preclusion is a question of state law. See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 22 n.8 (1st Cir. 2005). Under Maine law, res judicata may be found on the basis of either claim preclusion or issue preclusion. Portland Water Dist. v. Town of Standish, 940 A.2d 1097, 1099 (Me. 2008). "Whereas claim preclusion is focused on the claims set forth in the prior proceeding, [issue preclusion] concerns factual issues, and applies even when the two proceedings offer different types of remedies."[2] Id. at 1100.

The requirements of issue preclusion under Maine law are: (1) the identical issue was determined by a prior final judgment, and (2) the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." Machias Sav. Bank v. Ramsdell, 689 A.2d 595, 599 (Me. 1997). In examining the first requirement, the Court looks at what issues were determined in the proceeding that resulted in the termination of Plaintiffs' parental rights. In that state court action, Plaintiffs' parental rights were terminated as the result of a petition filed by

---

[2] In opposing the Motion to Dismiss, Plaintiffs argue (without citation) that they had no right to a jury trial in the termination proceeding and, thus, should be allowed to pursue their claims under the ADA and 42 U.S.C. § 1983 in a separate action where they can have a jury trial. (See Pls. Resp. (Docket # 27) at 8.) However, in Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), the Supreme Court held a litigant's right to a jury trial was not violated by the application of issue preclusion due to a prior action in which the facts were not decided by a jury. See id. at 334.

DHHS in accordance with 22 M.R.S.A. § 4052. The petition was then decided by the state court in accordance with the standard laid out in 22 M.R.S.A. § 4055. While the overriding focus of the court's decision is "the best interest of the child," the statute requires the court hearing the petition to consider, in relevant part, all of the efforts made by DHHS to reunify the family. See In re Justin T., 640 A.2d 737, 740 (Me. 1994) (noting that DHHS' "failure to meet its reunification obligations is only one factor to be considered in a termination case"). Thus, one of the issues explicitly decided in the termination proceeding was that DHHS "made reasonable efforts to rehabilitate and reunify the family." (Order (Docket # 16) at 12.) Plaintiffs' current claims essentially ask this Court to find that DHHS' reunification efforts in the case of G.M. were marred by violations of Plaintiffs' constitutional rights and violations of Miller's statutory rights under the ADA and the Rehabilitation Act. If true, DHHS' reunification effort would necessarily be inadequate and unreasonable. In short, the Court could not make the factual findings necessary to support Plaintiffs' claims without reexamining identical issues that were decided in the prior case.

As to the second prong, the Court finds Plaintiffs had a fair opportunity and incentive to litigate the issues now raised in this case in the prior state case. First, the record amply demonstrates that Plaintiffs substantially participated in the litigation. See State v. Hughes, 863 A.2d 266, 269 (Me. 2004) ("A party has a *fair opportunity* to litigate an issue if that party either controls the litigation, substantially participates in that litigation, or could have participated in the litigation had they chosen to do so.") Given what was at stake, the Court also finds that Plaintiffs had every incentive to litigate the issues surrounding DHHS' reunification efforts as well as any deprivation of constitutional rights or bias that contributed to DHHS' petition to terminate Plaintiffs' parental rights. In fact, the briefs provided to this Court show that Plaintiffs raised these issues repeatedly but neither the Maine District Court nor the Law Court found these issues had

merit or made factual findings that would support a claim under 42 U.S.C. § 1983, the ADA or the Rehabilitation Act. Moreover, in an effort to show that it is possible to raise an ADA claim in the context of a termination proceeding, Defendants have brought to this Court's attention at least one reported Maine case in which a mother did raise claims that DHHS violated the ADA in the context of a termination proceeding. See In re Angel B., 659 A.2d 277, 279 (Me. 1995). In short, the Court finds that the factual issues raised by Plaintiffs' claims are identical to some of the factual issues decided in the prior state court proceeding and that Plaintiffs had the opportunity and incentive to litigate those issues in the prior proceeding.

Having found that the Court lacks subject matter jurisdiction over Plaintiffs' claims for injunctive and declaratory relief and that Plaintiffs' remaining claims are barred by res judicata as a result of issue preclusion, the Court need go no further.

## IV. CONCLUSION

The Court hereby GRANTS Defendants' Motion to Dismiss (Docket # 26) and, on that basis, DENIES as MOOT Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (Docket #s 7 & 9). In light of these rulings, the hearing scheduled for January 12, 2009 is CANCELLED.

SO ORDERED.

                                            /s/ George Z. Singal
                                            United States District Judge

Dated this 9th day of January, 2009.